We'll take your time getting set up. Our next case is Shakira Admore versus Hospice of Palm Beach County, number 22-12280. Good morning, Your Honor. Good morning, Ms. Admore. We know you're here representing yourself. This is just an opportunity for us to talk to you about the case and what you think went wrong and why you think you're entitled to some relief. If at any point you don't understand something that we're asking you, just let us know and we'll try to rephrase our question to you, okay? Okay. Understood. Okay. And I just wanted to make note that I'm completely out of my element. There's no secret about it. I'm a registered nurse. I save lives, but I've dedicated myself to my case simply because it's important to me and I feel like there were some errors within the trial. This was a Family Medical Leave Act case and also it was a consolidated case with the Fair Credit Reporting Act. I didn't focus on the FCRA. I wanted to focus more on the FMLA because that was the initial complaint. The courts consolidated both cases and they both went before. The FCRA was given a direct averted and then my FMLA continued in the trial. The first thing that I wanted to note is that the jury was given instructions. That was inconsistent with the case. You say in your brief that part of it had to do with, part of the problem with the instructions had to do with how you defined an equivalent position. Correct. Is that right? Correct. What do you think the district court should have done and should have told the jury in trying to explain or define that term? An equivalent or similar position, I actually, in my brief, I actually pulled out exactly what the judge said and it read, Ms. Atmore, after she was employed, took leave under the FMLA. What we will probably call the FMLA during the proceedings, later on, after she took her leave, her employment was terminated. She claims that Hospice of Palm Beach County interfered with her ability to exercise her rights under the FMLA and that her termination was in retaliation for the fact that she took FMLA leave. The interference of that, the instruction to the jury was incorrect instruction. My case did not involve a retaliation claim. There was no retaliation claim filed with my case. That would have been a separate case if I chose to do so. The case was, as you stated, was I returned to a similar or equivalent position which was not given during jury instructions. An equivalent or similar position would have been equivalent to the position I left when I came, before I left. Right, but I guess that's my question to you is what does, in your mind, and we know you're not an attorney and we appreciate that and we're just trying to have a little bit of a dialogue, what do you think equivalence means? Equivalent means? Like, for example, if they had put you in the same building to work, but given you different duties, would that have been equivalent or no? It has to be exactly the same. Similar, it doesn't have to be exactly the same, but I'm expecting similar. And similar just would have been some of the same duties that I had, the same hours that I had. My hours were reduced to part-time. Obviously that's nowhere near similar or equivalent. I went from a full-time position to a part-time position, so that's what I would expect equivalent or similar to me. I'm coming back to work to similar job duties and I'm also coming back to the same hours that I left, which was 40 hours a week and it was reduced to 20 hours a week. Let me ask you something about your work, if I could. Sure. When you started working at hospice, you were a float manager, right? Correct. And that meant that you had to cover the work of other individuals at certain points in time. Correct. Did that floating also involve dealing with hospice patients directly, the sort of work you were given after your FMLA leave? Well, my position was a management position. Right. You were a float manager. Right. Of course, we deal with hospice patients, but if you mean direct care to patients, absolutely not. I had a team of employees, which consisted of different professions. I managed that team of employees. Float manager pertained to if one of the other managers that also had a team to manage were out on FMLA or they had a meeting or anything, I would go over and I would cover their team and sit in as the team manager, giving directives to those that are caring for hospice patients. I worked for hospice for a number of years, three years. The first two years was the float manager element. The organization chose to restructure the entire organization, which eliminated that float manager's position. We became patient care group managers, which means that each float manager was placed in, we had five areas. Each one was placed in an office, and that's where we were housed. We were no longer floating throughout the organization covering for every manager. The unit in question that I was told that I had to go and work in was our inpatient unit. In that inpatient unit, it was already staffed with a director, several supervisors, and you had your floor nurses that cared directly for patients. There was no need for me to be over there other than just, I couldn't speak for anyone else, but there was a need for me to go back in my position. My position was vacant. If you read the transcripts, there's consistent testimony that there was a need for me. My direct supervisor, who was Elaine Williams, testified under oath that she was misled by hospice and she was told that I resigned. She only found out that I was terminated during her deposition. She also voiced that she would have wished that I would have stayed on rather than been terminated. Let me turn back to the instruction. Here's the instruction the district court gave, I think, on equivalent positions. An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits, and working conditions, including privileges, prerequisites, and status. It must involve the same or similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority. What part of that do you think was a mistake? I wasn't returned to an equivalent or similar position. I was returned to a part-time position. You mean the instructions, what do I consider a mistake? It's one thing in legal terms, saying that you weren't returned to the same position is sort of a challenge to the verdict of what the jury determined. It may not be a challenge to what the district court told the jury in terms of its instructions. In other words, saying that the jury made a mistake is different than saying the court made a mistake in instructing the jury. I don't know if I'm making myself clear or not. I understand what you're saying, and you're correct. The errors that I pulled out is exactly what I said. The judge gave that jury instruction, so I felt like that instruction . . . I heard what you read that the court said, but in addition to that, there was more instruction given, which I felt confused the jury as to what they should go by. You're reading the standards of what was given, and then on down the line, he gave a different instruction to the jury. As a lay person, as a juror, which I am, that's confusion for me. I don't know which one to go by. In addition to that, and I see I'm running out of time. That's okay. Take your time. In addition to that, the defense brought a postal board as big as that television, held it up to the jury, and he asked the judge to charge me with perjury, told the jury that Ms. Atmore had 14 lawsuits that she had filed against different entities, and she's out to get money. If you look in their closing argument, it was all about money. Ms. Atmore has 91,000 reasons to want to sue hospice. The judge actually stopped the court, escorted the jury out, because I adamantly denied on the stand, I do not have 14. I do not have 14 lawsuits. It was asked by the court that I be charged with perjury. The judge stopped the court, escorted the jury out, researched it himself, came back, said Ms. Atmore does not have 14 lawsuits. Many of these lawsuits were brought in her name by insurance companies. Some of it was domestic violence, which pertained to my minor child being choked at school. I can't believe that a skilled attorney with knowledge and understanding of the law would not have researched to see that those lawsuits were not actual lawsuits of mine. In addition to that, the jury was escorted back in, and there was no correction. That postal board was left there, and it was allowed to remain in the courtroom. There was no correction at all. So you have a jury that has been painted hospice is this great place to work. They made all these accommodations for Ms. Atmore. Ms. Atmore is ungrateful. She has 91,000 reasons to sue. She's a habitual person that files lawsuits. There was no correction, no correction at all. So in my mind as a juror, and I can speak from a jury standpoint because I've been one. In my mind, the case shifts from did you return her to a similar or equivalent position to she's out for money. Okay, all right, Ms. Atmore, thank you very much. You've saved some time to come back and talk to us a little later, okay? Okay, thank you. Thank you. Mr. Is, how do I pronounce it, Feicht? Feicht. Good morning, may it please the court. My name is Roger Feicht. I'm with the law firm of Gunster, Yokeley, and Stewart. And I represent the appellee hospice of Palm Beach County Inclined, may refer to simply as hospice. I will try to be brief to save some time for any questions the panel might have. There are three main reasons why the court should affirm the final judgment in hospice's favor. First, plaintiff's allegations of the ineffective assistance of her own trial counsel is not a valid basis to reverse the jury's verdict in this civil trial. Second, plaintiff's arguments regarding the jury instructions on her issue of entitlement to FMLA failed because the instruction accurately stated the law. And the jury actually found in her favor on the issue of entitlement, so there was no prejudice. Third and finally, the jury instruction on the FMLA interference claim was accurate and plaintiff failed to object to that jury instruction at trial to preserve it for this appeal. There was some discussion. Was that instruction, I understand the argument about not objecting and not preserving the challenge, but was that instruction a jointly requested instruction or a defense requested instruction or a court created instruction? You remember how that came about? So there's two specific instructions that plaintiff argues about. I'm talking about the one dealing with equivalence. So the equivalence instruction is taken from the pattern instruction, the 11th Circuit's pattern 4.16. No, was it jointly agreed upon? I don't recall off the top of my head if the parties, we did submit alternative competing jury instructions before trial. The court then heard argument outside of the jury's presence as to those jury instructions. That specific language that the court read, defining what equivalent position I believe is in the pattern. I don't believe if either side had any objections to it. It certainly was not objected to during the charge conference and certainly plaintiff never contended that the definition of what an equivalent position is that Judge Jordan read earlier was somehow inaccurate. That's an accurate statement of the law. And additionally, the paragraph above that, and again this is docket entry 110 on page nine. The court instructed the jury on, and plaintiff did have two different claims under the FMLA. An interference claim and a retaliation claim. On the interference claim, she had two theories. And the court said for the fourth element, you must determine whether hospice interfered with Ms. Admore's FMLA rights. This element is satisfied if Ms. Admore has proven by a preponderance of the evidence that one, she requested intermittent leave but hospice forced her to take continuous leave. And or two, hospice failed to restore her to an equivalent job position to that which she had held prior to taking to leave. So the jury was instructed on hospice's obligations under the FMLA to return her to an equivalent position. It further defined what an equivalent position in the portions we've already read into the record. And the jury on the verdict form was specifically asked whether or not hospice returned her to an equivalent position. And I think the panel was pointing out that the jury just simply did not believe plaintiff's theory of the case that she was not restored to an equivalent position. There was an abundance of evidence presented at trial that the assignment- One of Ms. Admore's arguments, it's not the only one, and I know it's not related to the jury instruction, but Is that, at the very least, hospice didn't return her to an equivalent position because it reduced her from full-time status to part-time status. What is your response to that? So Ms. Admore did go to part-time status after she was given her job duty, which because of the needs of COVID-19, which caused many of hospice's medical staff to become sick or resign. Her job was a float manager, and there was multiple testimony that you float to where the need was. There was testimony, including from Beverly Hudson, that her and the other float managers worked in the IPU before and after COVID-19. And specifically, there was testimony regarding Ms. Admore working in the inpatient units before COVID-19. And specifically, the issue was when she returned from leave, all three float managers, not simply just Ms. Admore, but all three float managers were instructed, we need you to float to where the need was, their float managers. And the need right now is in the IPUs. This was COVID-19 in the spring of 2020, hospice cares for dying patients, and that's where the need was. And as an RN, as an RN float manager, that was her assignment. And Ms. Admore refused that assignment. Unlike the other float managers, Beverly Hudson testified at trial, she went into the IPUs three days a week. Ms. Admore refused to go in the IPUs three days a week, so she only worked two days a week. So the accommodation, and there was evidence in the record as to a letter sent to her saying, you're refusing to go in the IPUs three days a week. We'll still let you and pay you for the Tuesdays a week that you are working from the office. So that was not something that hospice forced her to only work part time. It was, she refused to do her job for three days a week. And so hospice understand generously and under no obligation to the law, allowed her to retain that position. And after her 12 weeks of FMLA leave exhausted, hospice kept her employed for an additional 60 days to allow her to either one, determine her childcare so that she could be comfortable working in the IPUs like the other persons in her same position, or figure out another job position to apply to within the organization. So she was given the opportunity to do her job, she simply refused. And because of that, the alternative accommodation that was provided to her was, well, you're not gonna do your job for three days a week, we'll still let you work two days a week. And that was the accommodation that was given to her. And again, the jury was instructed and Ms. Atmore was not prevented from presenting evidence about how this was not an equivalent position. But hospice also was allowed to submit evidence that it was an equivalent position. They heard from the senior human resources director that floating to the IPUs was always part of this role. Another RN float manager, Annie Floria, testified that it was her responsibility to cover where the need was. And she was not surprised that the float managers were assigned to go to the IPUs following the increased need caused by the COVID-19 pandemic. Elaine Williams, Ms. Atmore's supervisor, testified consistently that their assignment to the IPU was consistent with the need and the position's responsibilities. And so the plaintiff was allowed the opportunity to present her arguments why it wasn't equivalent, and the jury was able to resolve this question. And it was asked on the verdict form, did Ms. Atmore prove that her FMLA rights were interfered with because she was not restored to an equivalent position? The jury had been instructioned on what is equivalent position, consistent with the pattern instructions and regulations. The jury just simply did not agree with Ms. Atmore's theory of the case and found in hospice's favor, and that is certainly not a basis to disrupt the jury's verdict in that regard. Turning to the discussion about the poster board in trial, I want to make crystal clear that this issue was not properly raised in plaintiff's initial brief. It was only mentioned within the statement of facts, and plaintiff made no legal arguments to allow this to be considered on appeal. But even if it was preserved, it's important to realize this poster board was never shown to the jury, it was never submitted into evidence. Instead, it was a demonstrative that was only shown to plaintiff while she was on recollection. The jury could never see the content of that demonstrative. And when it was in the courtroom, which it was not in the courtroom for the entire trial, but while it was in the courtroom during Ms. Atmore's testimony, the jury could only see the blank back of the poster board, not the content of the poster board on the front. The front of that poster board- So the jury, when the cross-examination occurred, never saw the contents of the board? That's correct, Your Honor. It was held so that only Ms. Atmore on the witness stand, she was seated on this side of the room. The jury was on this side of the room. The jury never saw that, the content of that poster. So as I understand it, but the lawyer on cross-examination used the contents one by one by one to question the witness. Not one by one by one. That was plaintiff counsel's concern, because the reason that this, and it's explained in the briefs, but the reason Ms. Atmore's litigation history was relevant was because there were text messages missing from Ms. Atmore's document production and discovery. She produced text messages with another employer that she had been working with while employed at hospice on the weekends, which was permissible. But five days before she requested FMLA leave from hospice, she text messaged with that other employer, Trilogy, and secured a work day, work week job, a full time job with Trilogy. And then on January 24th, those text messages were missing from Ms. Atmore's production. We got them through a subpoena and a deposition of Trilogy's representative. And we confronted the court in a motion for adverse instruction, asking for an adverse instruction on those discovery abuses, including those text messages. The court denied that motion, but did allow us to cross-examine Ms. Atmore on her failure to produce those text messages. And their text messages were damning to her theory of the case, because it showed that before she ever asked FMLA leave from hospice, she had secured another job. And indeed, she testified at trial that she worked on that other job throughout her FMLA leave of 12 weeks. And so this was incredibly damaging test evidence that was not produced by plaintiff. We were permitted to cross-examine her on it. We did not run through the 14 cases. Again, I think there was some confusion on plaintiff's part, that there was a suggestion that she was the plaintiff in 14 civil cases. That was never stated to the jury. Instead, it was 14 cases. How many of the 14 were used for cross-examination? None of them were mentioned specifically. And the content of that poster board was never read to the jury. Instead, it was used in an attempt to refresh a recollection. If I may, I can read from the testimony of plaintiff. This is at docket entry 143 on page 111. So we presented the fact that she did not produce those damaging text messages. And then the question of plaintiff was, question, have you been involved in other lawsuits, either as a plaintiff or a defendant? Answer, yes, but nothing like this. Question, isn't it true that you've been involved in at least 14 separate lawsuits since 2005? Answer, you would have to stipulate each lawsuit for me to see. Answer, or question, okay. So plaintiff claimed that she did not recall her litigation experience. And so this poster board, not visible to the jury, was brought to her to say, does this refresh your recollection of the other cases that you've been involved in? She claimed not to recall that litigation history. And when plaintiff claimed that the list of legal proceedings did not refresh her recollection, the court ultimately prevented further questioning on the subject. The poster board was never presented with evidence. The jury did not list out the 14 cases, which was plaintiff's counsel's concern, that we were gonna go through and litigate those 14 cases. None of them were mentioned by case name. And so contrary to the suggestion within plaintiff's statement of facts, the poster board was not shown to the jury. It was not read to the jury. The trial court then heard argument of counsel outside of the jury's presence, and ultimately denied hospice's request to take judicial notice of the poster board, or excuse me, take judicial notice of those other cases in the public record. And that list was simply a list of cases where Shakira Admore was involved, not only as a plaintiff in a civil case, but either in one side of the case or another in litigation in Palm Beach or Broward County. So there was no misconduct on the poster board. It was never admitted evidence. And any prejudice from this abbreviated questioning that had been cut off by the court could have been cured through redirect examination. And importantly, the trial court did instruct the jury that lawyers' questions are not evidence. And plaintiff, I take what you say about the poster board not being shown to the jury, but Ms. Admore certainly has a very different recollection of some of the events. Is there somewhere in the trial transcript where that is made clear that the poster board is being turned around in such a way that the jury can't see its contents or no? There's no, that is not in the transcript because the jury was never shown its content, and then in fact the opposite is in the transcript. The trial court, Judge Reinhart, specifically said that the, this is outside of the presence of the jury at a sidebar, that the content of the poster board could not be referenced because it had not been admitted into evidence. This was at the very beginning of the questioning. And so, and plaintiff's counsel correctly pointed out that it could be admitted as an impeachment exhibit only if plaintiff testified inconsistently with something on the board and then it could be used to impeach her, which she never did. Plaintiff's counsel correctly pointed out, if she doesn't recall, that's not an impeachment. And that's what happened. Plaintiff claimed, I don't recall these other matters. I don't recall my litigation history. And the court said, move along, and it's not in evidence. So, in fact, the transcript proves that the poster board, its content was never shown to the jury, it was never read to the jury, and it certainly was never admitted into evidence. Plaintiff also never requested that the trial court give an instruction that the litigation history that she was shown was untrue, as suggested in her statement. Counsel, can you tell me exactly again where in the record you're pointing to so that I can look it up later? I do not have the page site in front of me, but it is the discussion of this. Is a docket entry 143, page 115 is when this discussion occurs. That's fine, thank you. And page 117 is when the court prevents further questioning on the poster board and moves along. But again, Judge Reinhart during a sidebar says, it's not in evidence, you may not refer to it. And the record is clear if the court reviews those pages of the transcript that none of those other 14 cases are mentioned by name at all. It is just simply plaintiff claimed as a relevant line of questioning what her litigation history was. Again, to prove that she knew she had an obligation to preserve and produce relevant documents, especially those prejudicial to her theories. And she claimed not to recall. An attempt was used to refresh her recollection. It did not refresh her recollection and we moved along. And so again, this issue was not preserved since it's only in the statement of facts. Even if it was preserved, this abbreviated line of questioning using a demonstrative exhibit, there was no prejudice there. Also, I did want to mention that the issues as to the jury instructions, as to her entitlement to leave, there was no prejudice because the jury found in her favor. And her objections to the jury instruction on the definition of interference was actually confirmed by plaintiff's counsel as an accurate statement of the law at docket entry 144, page 239. And so in addition to not being an objection on the record, there was a confirmation that this was an accurate statement of the law. So the jury instructions were accurate. And any of the other issues raised either in the statement of facts, within arguments criticizing her own counsel, or in the reply brief, were not properly preserved and waived. I see that I'm out of time. Does the panel have any other questions? No, thank you very much. All right, thank you. We ask that the final judgment in hospice's favor be affirmed. As during trial, there were several misrepresentation, as is today. Attorney Fike just stated that I never mentioned the large poster board in my brief, if you'll turn to page two in my brief, it's mentioned right in the brief. No, let me correct you there. He said that you did mention it in the early part of your brief.  But that you didn't make any legal argument about it later in your brief. Okay. That's what he said. Okay. He didn't say that you never presented anything about the poster board. Okay, and he mentioned the 30 and 60 days and me with another employer. I know this is not the time for us to argue the case, but I did want to speak on that. That employer was my employer before I started at hospice. I was doing both jobs in 2017 the same. I chose to go to hospice full time and cut down on hours at the other job. If you will note the FMLA paperwork, you will see both consecutive and intermittent, my signature is by both. There's no signature on the final line because I refused to sign the document. I never asked for consecutive FMLA. I was forced out of my position, and the foundation of the case was excluded by the judge because he signed a motion that limited my testimony. Now, it's stated that I went on FMLA for anxiety. There's tons of people in the world with anxiety. If you look at the FMLA paperwork, the paperwork says anxiety and panic attacks due to workplace stressors. I was actually attacked on the job by a six feet tall man. He cornered me in the cubicle, threatened my life. I reported this to human resources, and it just became severe from there. The evidence will show that he was disciplined. There were people who gave statements as to having to pull him away from me. He trapped me in my cubicle. I'm sitting down in the chair. I couldn't move. I developed anxiety and panic attacks at work. I couldn't even stand up and walk. I was in fear of my life. I had to be wheeled in the chair to the nurse practitioner at the job. This was all excluded from my trial. So the jury hears Ms. Admore went out on FMLA for anxiety. Everybody has some type of anxiety. They were excluded. They were prevented from hearing the foundation of my case. And the foundation was I went out for anxiety and panic attacks due to workplace stressor. I was forced out on consecutive, I called the job and asked for paperwork cuz I was at the doctor's office being treated. I was started on Xanax, 0.25. The doctor wanted me to take at least two to three days off just to see how the medication works. These are episodic episodes. A doctor does not give consecutive FMLA for episodic episodes of a mental health issue. It was just so that I can get some medication in me and I can get my therapy on the way. Instead, when I called the job, I was immediately locked out of the computer. I was locked out of everything. I am a single mom with a child. I need to work. I had no PTO time because I was out sick from this attack on me at work. So I did call my employer, my second employer. And I said, hey, can I pick up hours here? Because I needed money. I needed to feed myself and my son. I also called the EEOC. But as he mentioned, it was right in the height of the pandemic. I couldn't get any appointments. I couldn't get anybody to respond to me because things were shutting down. It was claimed that I refused to do my job. That is incorrect. I was willing to do my job. I came back to do my job. He stated that the other two managers also worked in the IPU. That was untrue. Every manager in the organization was working from home. When I decided to come back, I was told I had to go to the IPU because they had a letter from my son's doctor that says, he's been in respiratory distress during the pandemic. Ms. Admore is not allowed to work around any positive COVID patients for fear of transmission to her son. Now, my son is a twin. You will see in the docket that the judge also gave a motion limiting me to talk about my child. It was said that the motion was approved because it would bring too much sympathy from the jury. Now, you'll hear me in my testimony talk about my living son who has asthma and went into respiratory distress. But what I wasn't permitted to talk about is my son who died, who I lost to a viral respiratory issue. I could not leave my child at home and have someone else care for them. So I simply said, why are you making me do something that other managers aren't doing? And because I raised the issue and I said I'm going to the EEOC, I was permitted part-time employment with hospice. They didn't do a courtesy of 60 days. There was an email that came out that I kept hold to on May 13th that says, any employee who is affected by COVID, their children, anything, we will permit you to work until the end of May and keep your full-time status. For me, I was dropped to part-time. So I raised the issue, why does everybody else in the organization get to stay full-time but I'm part-time? So hospice did me no courtesy, but the jury was unable to hear these things because the judge eliminated the foundation of my case. So I appear to be a crazy woman that has anxiety, went out on consecutive FMLA. I'm after hospice for money. And he was able to paint that picture in his closing arguments. If you pay close attention to the closing arguments, he used Beverly Hudson, who we just mentioned here, to also give testimony that I was trying to manipulate the company out of $3,000. It had nothing to do with the case. Tuition reimbursement is a benefit of the company. I only asked for tuition reimbursement. But that was given to the jury as if I was asking something that all other employees did not get. So the foundation of my case was excluded. I was eliminated from talking about certain things. And the judge even said, Ms. Atmore, I see you're struggling with giving your testimony. Yes, I was struggling because I wasn't permitted to talk about things. That was the foundation of the case.  We appreciate your presentation. And we'll take the case.